## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF GEORGIA
## VALDOSTA DIVISION

**LAQUISHA KNIGHT,**

     Plaintiff,

v.

                                  Civil Action No. 7:19-CV-22 (HL)

**VILLA NORTH GA, LLC, ROYAL AMERICAN MANAGEMENT, INC., JOHN DOE, ABC CORPORATION, and XYZ ENTITY,**

     Defendants.

## ORDER

Plaintiff Laquisha Knight filed this premises liability action to recover for damages she sustained after falling in a common area at her apartment complex. Before the Court is Defendants Villa North GA, LLC and Royal American Management, Inc.'s Motion for Summary Judgment. (Doc. 28). After reviewing the pleadings, briefs, affidavits, and other evidentiary materials presented, the Court finds that Defendants are entitled to judgment as a matter of law and **GRANTS** Defendants' motion.

## I.    FACTUAL BACKGROUND

Plaintiff Laquisha Knight was a tenant in Apartment K-6 at Villa North Apartments ("Villa North") in Thomasville, Georgia from 2014 until 2018. (Knight Dep., p. 18). During her tenancy, the apartment complex was owned by

Defendant Villa North GA, LLC and managed by Defendant Royal American Management, Inc. (DSOFM, ¶¶ 1-2).[1] Sharmeika Hall served as Villa North's on-site property manager from September 15, 2015 through March 12, 2017. (Id. at ¶ 3). Jacary Byrd was the assistant property manager from August 24, 2015 through March 12, 2017, when he was promoted to property manager. (Id.; Byrd Decl., ¶ 2).

On the afternoon of October 11, 2016, Plaintiff's mother, who also lived in Villa North, asked Plaintiff to bring her a frozen chicken. (Knight Dep., p. 48, 62). Plaintiff testified that she rarely walked from her apartment to her mother's. (Id. at p. 67, 70). When Plaintiff did walk from her apartment to her mother's she took a route that led her past the complex's mailboxes. (Id. at p. 68). The day of her fall, she instead walked through a grassy area between the K-building and a neighboring building. (Id. at p. 64; Ex. 3). Plaintiff stated that she walked through the grassy area only two or three times prior to her fall. (Id. at p. 67-68).

As Plaintiff walked between the buildings, either her foot or her heal caught in a hole. (Id. at p. 80). She was thrown onto her back and hit her head. (Id. at p. 79-80). Some children playing close by came over to ask if she was okay. (Id. at p. 80). Plaintiff was not aware of the hole prior to her fall and did not notice it until she was being helped up from the ground. (Id. at p. 70-71, 91). She described

---

[1] "DSOMF" refers to Defendants' Statement of Material Facts. (Doc. 28-8). The cited paragraphs are those admitted by Plaintiff.

the hole as deep and looking as though something had been removed from the ground:

> To me it looked like it was something that was stuck there because it was real deep. And it's, like I don't know if it was something had been removed or not, but I figure it was probably either a gas pipeline or either – what they call it? A pole or either a light pole.

(Id. at p. 71). Plaintiff said that the hole was wide and appeared to be lined with cement. (Id.).

Plaintiff's boyfriend Mo Calhoun was waiting for Plaintiff in the parking lot outside her building when she fell. (Calhoun Dep., p. 10-11). He did not see her fall, but when he saw Plaintiff on the ground, he ran to help her. (Id. at p. 11, 14). Plaintiff told Calhoun that she fell in a hole. (Id. at p. 20). Calhoun testified that grass covered the hole, and it was difficult to see. (Id. at p. 21-23, 35). However, Calhoun also testified that he could not confirm whether he saw the hole because "there was a lot of grass." (Id. at p. 36).

Shonese Mills, a friend of Plaintiff's, was nearby and heard crying. (Mills Dep., p. 30). When she went to investigate, Mills saw Plaintiff lying on the ground. (Id. at p. 35). Mills and Calhoun helped Plaintiff off the ground. (Id. at p. 36). Plaintiff was in pain. (Id. at p. 40). Mills was not aware of the hole that caused Plaintiff's fall until this incident, even though her grandchildren often played in the area. (Id. at p. 51, 55, 58). Mills testified that she did not inspect the hole closely. (Id. at p. 55). She thought "it was a little deep, but it wasn't that

3

deep." (Id. at p. 56). To Mills it appeared as though "something was there and, like somebody had pulled it up" or "like rubbish, like somebody, like, kicked up some hole, like a dirt, like they just dug it up or something. . . . or maybe it kind of rained and the rain could have did it." (Id). Mills is familiar with Villa North. (Id. at p. 11). She has lived in the apartment complex off and on since she was a child. (Id.). She indicated that she had no recollection of anything being removed in the area where Plaintiff fell that could have caused the hole. (Id. at p. 57). She thought perhaps a child pulled something out of the ground. (Id. at p. 56).

Neither Sharmeika Hall nor Jacary Byrd had knowledge of the hole before Plaintiff's fall. (Hall Dep., p. 64, 66; Byrd Decl., ¶ 4). Hall further testified that she was not aware of the removal of any fencepost, pipe, or anything else in the area where Plaintiff fell. (Hall Dep., p. 69). According to Hall, members of Villa North's management and maintenance team performed weekly walking inspections throughout the entire apartment complex. (Id. at p. 41) During these inspections, they examined the exterior of the buildings, checked for erosion, and observed any issues with the grounds and sidewalks. (Id.). If any defect, such as a hole, was discovered during the walkthrough, maintenance would immediately address it. (Id. at p. 70). A work order would be prepared for any repair. (Id.).

Davis Lawn Care provided lawn maintenance for the apartment complex. (Id. at p. 54). The lawn care company cut the grass, trimmed the bushes, and cleaned the fence line. (Id. at p. 55). From approximately March or April through

4

September or October of each year, Davis Lawn Care provided services once a week. (Id. at p. 53-54). In the winter months, from around September or October through March or April, the landscaping company provided services every two weeks. (Id.). Davis Lawn Care reported any unsafe conditions they observed. (Id. at p. 55).

## II.   SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A genuine issue of material fact arises only when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  When considering a motion for summary judgment, the court must evaluate all of the evidence, together with any logical inferences, in the light most favorable to the nonmoving party.  Id. at 254–55.  The court may not, however, make credibility determinations or weigh the evidence.  Id. at 255; see also Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000).

## III.   DISCUSSION

Under Georgia law, "[a]n owner or occupier of land has a legal duty, enforceable by lawsuit, to exercise ordinary care to keep and maintain its

premises and the approaches in a condition that does not pose an unreasonable risk of foreseeable harm to the invited public." Am. Multi-Cinema, Inc. v. Brown, 285 Ga. 442 (2009); O.C.G.A. § 51-3-1 ("Where an owner or occupier of land, by express or implied invitation, induces or leads others to come upon his premises for any lawful purpose, he is liable in damages to such persons for injuries caused by his failure to exercise ordinary care in keeping the premises and approaches safe."). Nevertheless, a property owner "is not an insurer of the safety of its invitees," and the "mere occurrence of an injury does not create a presumption of negligence." Kennestone Hosp. v. Harris, 285 Ga. App. 393, 393-94 (2007) (citation and punctuation omitted).

"Proof of an injury, without more, is not enough to establish a proprietor's liability." Ford v. Bank of Am. Corp., 277 Ga. App. 708, 709 (2006) (citing Sams v. Wal-Mart Stores, 228 Ga. App. 314, 316 (1997)). To recover in a slip and fall action, the injured party "must prove (1) that the defendant had actual or constructive knowledge of the hazard; and (2) that the plaintiff lacked knowledge of the hazard despite the exercise of ordinary care due to actions or conditions within the control of the owner/occupier." Robinson v. Kroger Co., 268 Ga. 735, 748-49 (1997).

Plaintiff has presented no evidence of Defendants' actual knowledge of the hole that caused Plaintiff's fall.[2] To avoid summary judgment, Plaintiff therefore must point to evidence that Defendants had constructive knowledge of the hole. "Constructive knowledge can be shown by evidence that a proprietor's failure to discover the hazard resulted from its failure to exercise reasonable care in inspecting the premises." Witt v. Ben Carter Prop., LLC, 303 Ga. App. 107, 110 (2010). "[T]he evidence must show that the hazardous condition existed on the premises for a sufficient period of time such that [the defendants] should have discovered and removed the hazard." Id. (quoting Armenise v. Adventist Health Sys./Sunbelt, Inc., 219 Ga. App. 591, 593 (1995)). "An owner/occupier is on constructive notice of what a reasonable inspection would reveal." Jackson v. Waffle House, 245 Ga. App. 371, 373 (2000) (citations omitted); see also Hansen v. Cooper, 253 Ga. App. 533, 536 (2002) ("[T]he law requires only the exercise of ordinary care, not extraordinary care.").

---

[2] In response to Defendants' motion for summary judgment, Plaintiff introduced the declarations of Cortes Hayes, Patricia Byrd, and Sharon Knight. (Doc. 33-1, 33-2, 33-3). Each declarant claimed that Defendants removed a fence from the area in question several months prior to Plaintiff's fall, ostensibly creating a question of fact regarding Defendants' actual knowledge of the hole. (Id.). Notably, prior to the submission of these declarations, neither Plaintiff nor any other properly identified witness testified about the existence or removal of a fence or any structure preceding Plaintiff's fall. Defendants moved to strike the declarations pursuant to Fed. R. Civ. P. 26(a)(3) because Plaintiff failed to timely disclose the identity of these witnesses. (Doc. 34). Finding that Plaintiff's late disclosure of these witnesses was not substantially justified or harmless, the Court granted Defendants' motion to strike. (Doc. 37).

Plaintiff points the Court to the Georgia Court of Appeals' recent decision in <u>Watson v. Dana</u>, 356 Ga. App. 645 (2020). There, the court concluded that the plaintiff's "testimony regarding the size of the hole and the overgrowth covering it would permit a reasonable jury to infer both that [the hole] had been in existence for a substantial period of time and that it was large enough to have been observable during routine mowing and maintenance." <u>Id.</u> at 647 (quoting <u>Lawless v. Sasnett</u>, 200 Ga. App. 398, 399 (1991)). As in <u>Watson</u>, the size of the hole described by Plaintiff may be sufficient to raise an inference that the hole existed for some period of time. However, in <u>Watson</u>, there also was proof that the landowner provided poor maintenance of the yard and that she admittedly did not inspect the yard for hazards. <u>Id.</u> Here, there is undisputed evidence that Defendants performed weekly inspections of the complex and contracted for routine lawn service. And, despite taking these reasonable measures to inspect the property, Defendants failed to discover the hole hidden underneath the grass. "This is not negligence." <u>Armenise</u>, 219 Ga. App. at 594. "To hold otherwise would be to impose a duty on the defendants to anticipate the existence of a hazard which they had no reason to believe existed or to impose a duty to exercise extraordinary care to inspect the premises by physically pressing down the grass on every square foot of the property to discover the possible existence of an obscured depression or indentation in the ground." <u>Id.</u>

The facts in this case are more similar to a long history of cases in which the Georgia Court of Appeals has affirmed summary judgment "where invitees stepped into small concealed holes in well-maintained, regularly inspected grassy areas." Ermert v. Wildwood at Meadow Gate Homeowners Ass'n., Inc., 354 Ga. App. 656, 660 (2020) (citing Witt, 303 Ga. App. at 112 (finding that the plaintiffs failed to produce evidence of the defendants' constructive knowledge of holes in a median where the evidence demonstrated that the holes were rendered invisible by the regularly maintained and inspected grass)); see e.g., Thomas v. Deason, 289 Ga. App. 753, 756 (2008) (summary judgment affirmed where the landowners testified that they walked their dog around the property daily and inspected the yard but never discovered any irregularities); James v. Vineville Christian Towers, Inc., 256 Ga. App. 72, 75 (2002)(affirming summary judgment where the defendant provided evidence that a maintenance supervisor and security guard regularly patrolled the area but never discovered a hole and never received any complaints about a hole); Armenise, 219 Ga. App. at 594) (affirming summary judgment where the evidence showed that the depression causing the plaintiff's fall was concealed by thick grass that was mowed and inspected on a weekly basis)).

In Ermert, the plaintiff was walking in a common area near a neighborhood pond when she stepped in a hole, causing her to fall and fracture her foot. Id. at 657. The plaintiff testified that she walked through the area several times a

month and that she last was there two or three weeks prior to her fall. Id. at 559. She never saw the hole before her fall and was not aware of any prior incidents in the area. Id. There, as here, no evidence showed that the defendant had actual notice of the hole causing the plaintiff's fall. Id. at 658. Likewise, there was no evidence of prior complaints of a hazard in the area. Id. But evidence did demonstrate that the defendant conducted inspections of the area several times a year and regularly maintained the grass. Id. at 559-60. The Court of Appeals held that the plaintiff failed to demonstrate "that a more thorough inspection of the common area was needed to ameliorate the conditions of the common area." Id. at 660. Further, while the defendant "had a duty to reasonably inspect the grassy common areas, they were under no obligation to conduct an inspection to disclose every latent defect." Id. at 660-61.

Similarly, in Lonard v. Cooper & Sugrue Prop., Inc., the Georgia Court of Appeals explained that "[o]rdinary care . . . to keep the premises in repair does not . . . embrace an affirmative duty" to conduct an inspection "as will disclose the existence of any and all latent defects." 214 Ga. App. 862, 864 (1994). The plaintiff in Lonard fell and injured her wrist after stepping into a hole obscured by leaves. Id. at 862. After her fall, the plaintiff discovered that the hole was one in a line of holes, all of which were covered with leaves. Id. The holes appeared to contain remnants of wooden fence posts. Id. at 862-63. An employee for the

landowner testified that he had no recollection of any fence on the property nor of the removal of any fence. Id. at 863.

The landowner in Lonard presented evidence that it conducted a visual inspection of the property prior to the plaintiff taking possession. Id. at 864. Additionally, there was no evidence that before the plaintiff's fall anyone had ever tripped or fallen in the area. Id. The Court of Appeals concluded that "[e]ven if we construe the record to show that this hazard had existed on the property since [the landowner] acquired it . . ., there is no evidence to support a claim that [the landowner] failed to exercise ordinary care in inspecting the property and keeping it in good repair." Id. "To conclude under the facts of [the] case that [the landowner] had an absolute duty to conduct an inspection of the property sufficient to discover the fence post hole would be to demand the exercise of an extraordinary degree of diligence." Id. at 865.

Here, the origin of the hole that caused Plaintiff's fall is unknown. Plaintiff testified that it appeared as though "something . . . was stuck there" such as a gas pipeline or a light pole. (Knight Dep., p. 71). Plaintiff's tenancy at Villa North began in 2014; yet, she provided no testimony regarding her memory of any structure being removed from the site of her fall. When shown a picture of the hole in which Plaintiff purportedly fell, Sharmeika Hall, the property manager, agreed that it appeared as though something cylindrical, such as a pipe or post, had been removed from the ground. (Hall Dep., p. 75). However, Hall confirmed

that she was unaware of anything being removed from the ground between the two buildings where Plaintiff fell. (Id. at p. 69). Shonese Mills, who testified that she lived in Villa North off and on from childhood, also had no recollection of anything being removed that would leave behind a hole. (Mills Dep., p. 57).

Children were known to play in the area where Plaintiff fell. (Knight Dep., p. 80; Mills Dep., p. 51, 55). Yet the evidence is undisputed that prior to Plaintiff's fall, there were no reports of the hole or anyone falling or tripping in the hole. (Hall Dep., p. 64, 66; Knight Dep., p. 71; Mills Dep., p. 51, 55, 57; Byrd Decl., ¶ 4). The evidence is also undisputed that despite Defendants' regular inspection of the premises and routine lawn maintenance, the hole remained concealed and difficult to see. (Calhoun Dep., p. 21-23, 35-36; Hall Dep., p. 41, 53-55; Mills Dep., p. 55-57). Plaintiff, thus, has failed to present evidence from which a reasonable jury could conclude that Defendants failed to exercise ordinary care to eliminate the hazard. In the absence of either actual or constructive knowledge, Defendants are entitled to judgment as a matter of law.

## IV.    CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendants' Motion for Summary Judgment. (Doc. 28). Plaintiff is **ORDERED TO SHOW CAUSE** by April 9, 2021 why her remaining claims against Defendants John Doe, ABC Corporation, and XYZ Entity should not be dismissed.

**SO ORDERED** this 26th day of March, 2021.

_**s/ Hugh Lawson**_
**HUGH LAWSON, SENIOR JUDGE**

aks